**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.  2:24-cr-64** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **KENNETH D. TRIPLETT,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before this Court on Defendant Kenneth D. Triplett's three pending *pro se* motions: a motion to compel discovery and request for evidentiary hearing (ECF No. 51); a motion to reconsider a continuance (ECF No. 67); and a motion to reconsider the extension of pretrial motion deadlines (ECF No. 70). This Court entered its decision on these motions on the record during a *Franks* hearing held by this Court on Tuesday April 15, 2025, and a *Lafler* hearing on May 1, 2025.  Its reasoning is more fully set forth below. For the following reasons, the motions (ECF Nos. 51, 67, 70) are **DENIED**. Standby counsel is **DIRECTED** to assist Mr. Triplett with requesting the transcript for the April 15, 2025 hearing.

### I.     BACKGROUND

#### A.  Factual Background

On April 23, 2024, a Grand Jury charged Mr. Triplett with one count of possession with intent to distribute fentanyl and heroin and one count of possession with intent to distribute cocaine, both in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(C). (ECF No. 2).  On March 13, 2025, the Government filed a Superseding Indictment adding one count of possession with intent

to distribute 28 grams or more of cocaine base in violation of 21 U. S. C. §§ 841(a)(l) and 841(b)(l)(B)(iii). (ECF No. 53).

Mr. Triplett's charges arise from a search warrant executed on April 3, 2024. (ECF No. 34-1 at 7). The search warrant affidavit, completed by Detective Adam Masinelli, explains that before the search warrant was executed, he and the Guernsey County Sheriff's Office investigated Mr. Triplett for drug trafficking. (*Id*.). Detective Masinelli states in his affidavit that on March 16, 2024, the detective received an anonymous tip through a voicemail from a confidential source. (ECF No. 34-2 at 3). The CS identified Triplett and explained Triplett was from Chicago, was in the area with a known drug user, and had a large amount of methamphetamine, fentanyl, and cocaine. (*Id*.). Detective Masinelli describes Triplett's criminal history, which includes crimes involving violence, weapons, and drugs. (*Id*.). The detective also reports that, at the time of the affidavit, there was an active full extradition warrant for Mr. Triplett out of Beltrami County Sheriff's Office in Minnesota for failure to appear on a drug charge. (*Id*. at 4). There was also a warrant out of Indiana (and not in the arrestable radius) for his failure to appear on a false report charge. (*Id*. at 4).

On April 1, 2024, Detective Masinelli received information regarding Mr. Triplett from a confidential informant with a credible history. (*Id*. at 3). The informant provided text messages that led the detective, based on his experience as a narcotics investigator, to believe Mr. Triplett was involved in narcotics transactions. (ECF No. 34-2 at 3). On the morning of April 3, 2024, the confidential informant provided additional information: Mr. Triplett and a woman named Ashley Moore were going to get a local hotel room and Mr. Triplett had "a large amount of narcotics on him." (*Id*. at 4).

After receiving this information from the confidential informant, the detectives, including the affiant Detective Masinelli, surveilled local hotels and identified Mr. Triplett and Ms. Moore together in a car at the Quality Inn Hotel. (*Id*.). In his affidavit, Detective Masinelli reports that, "[t]hrough investigation, [he] made contact with" the hotel staff "after identifying [himself] as a law enforcement officer and requesting information about Moore and Triplett." (*Id*.). He then stated that he "was able to obtain photographs of the Hotel database which showed Moore renting room 233 on 4/3/2024 at 0951 hours in her name." The detective explained that "[b]ased on the information throughout" the affidavit, he believed that Mr. Triplett and Ms. Moore were staying in room 233. (*Id*.). Detective Masinelli also requested a non-consensual entry warrant and sealing. (*Id*. at 2). He supported his requests by explaining, *inter alia*, that the confidential informant reported Triplett made threats to the informant stating, "Don't make me have to kill you."(*Id*.).

The search warrant for a search of room 233 was granted by Judge Stephanie Williams of the Municipal Court in Cambridge, Ohio. (ECF No. 34-1 at 7).  The s earch warrant was executed on April 3, 2024, and officers seized approximately 323 grams of crack cocaine, 45 grams of fentanyl, and 51 grams of marijuana from the hotel room. (*Id*.). Mr. Triplett was arrested on his full extradition warrant from Baltrami County Sheriff's Office in Minnesota and a case pursuing federal charges against Mr. Triplett was opened in the Southern District of Ohio. (*Id.*).

### B.  Procedural History

On July 8, 2024, Mr. Triplett filed a request for an evidentiary hearing, arguing that the photographs of the hotel database were not initially included in discovery and, due to "the lack of chain of custody and photoshop and other picture altering apps and programs . . . the defense will like a special evidentiary hearing to inspect the devices for dates and timestamps concurring to the April 3, 2024, date." (*Id*.). He additionally filed a Motion to Inspect Physical Evidence and for

Forensic Extraction in which he requests inspection of all evidence, including Ms. Moore's cellphone and a text message thread with the confidential informant. (ECF No. 20 at 1). On August 21, 2024, Mr. Triplett still had not received the requested photographs of the hotel database, so he filed a Motion to Suppress Evidence Pursuant to *Franks* and Motion to Dismiss Indictment. (ECF No. 25). In the Motion to Suppress, Mr. Triplett requested this Court "suppress all evidence based on an insufficient search warrant affidavit and search warrant." (*Id*. at 1). He argued that all evidence should be suppressed based on a false statement in the affidavit, the statement that Detective Masinelli obtained photographs of the hotel database. (*Id*.; ECF No. 34-2 at 4). Mr. Triplett asserted that the affidavit contained a false statement invalidating the search warrant because the Government failed to disclose these photographs with timestamps indicating the photographs were obtained before signing the affidavit. (ECF No. 25).

After receiving photographs of the hotel database, Mr. Triplett additionally requested an expedited evidentiary hearing because the photographs he received did not have timestamps to show they were taken before the execution of the search warrant. (ECF Nos. 30; 32). Triplett later filed a motion to compel requesting, among other things, the photographs of the hotel database with timestamps and information in connection with the "death threat" referenced in the search warrant affidavit. (ECF No. 38). The Government agreed to provide the timestamped photographs and confirmed the threat was relayed in an in-person conversation and that there is no related discoverable material. (ECF No. 39).

On December 19, 2024, this Court entered an Opinion and Order denying as moot the request for the death threat information and holding the motion to compel the photographs with timestamps in abeyance pending the Government's confirmation that it provided the requested information. (ECF No. 43 at 8). On the same day, the Government confirmed it provided the

evidence to Defendant's standby counsel. (ECF No. 44). In the Opinion and Order, this Court also addressed Defendant's motions for hearings and to suppress evidence pursuant to *Franks* based on the same requested timestamped photographs. (ECF No. 43 at 10). This Court found that, with the photographs and timestamps the Government agreed to provide, the statement that Masinelli "was able to obtain photographs of the Hotel database" was not a false statement to support a *Franks* hearing. (ECF No. 43 at 12). This Court also found that regardless of the alleged false statement, Triplett failed to show how Masinelli obtaining the photos would be necessary for finding probable cause for the search warrant. (*Id*. at 13–14).

After Triplett received and reviewed the photographs with timestamps, he filed new motions to compel and for an in-court discovery and inspection hearing. (ECF Nos. 51; 57). The motion to compel included requests for an opportunity to "inspect" evidence related to the timestamped photographs, information about an alleged death threat, additional photo evidence, surveillance, body/dash cam footage, and information stored on phones in evidence. (ECF No. 51). In the motion, Triplett referenced his previous motions to compel, motions to suppress evidence pursuant to *Franks*, and motions for evidentiary hearings in connection with the search warrant affidavit statement that Masinelli "was able to obtain photographs of the Hotel database." (*Id*. at 1; ECF No. 34-2 at 4). Triplett argued that he has not had an opportunity to "inspect" the devices or software used to take the photos with timestamps and that he had not received the appropriate photos or evidence to support the photos. (ECF No. 51 at 1). He explained needing a hearing on the matter so that he may "challenge the authority of the process during the timestamping." (*Id*.). Triplett also filed a motion for continuance emphasizing his need for the evidence from the motion to compel and his desire for a discovery and inspection hearing. (ECF No. 61).

Around the time Mr. Triplett filed a motion to compel, the Government filed the Superseding Indictment and a motion requesting a *Lafler* hearing due to Triplett's refusal to accept a plea offer. (ECF Nos. 52; 53). On March 17, 2025, this Court held the *Lafler* hearing and noted on the record that based on the Government's exhibits, under the plea agreement Mr. Triplett's recommended sentence was anticipated to range from 46 months to 87 months, without a mandatory minimum. Denying the plea offer and going to trial brought the recommended sentence range to 97 months to 162 months, with a mandatory minimum of 60 months. Triplett confirmed rejecting the plea offer and confirmed receipt of the Superseding Indictment.

On April 9, 2025, this Court held a telephonic status conference to discuss Triplett's pending motions. (ECF No. 62). During the status conference, Triplett clarified that the information regarding the photographs is particularly relevant for his pretrial motions, as he intends to file a suppression motion. (ECF No. 66). Triplett's standby counsel indicated that an expert examined the timestamped photographs at issue and could not conclude that any modification was made. Triplett nonetheless maintained that the timestamps suggested that the photographs were not taken on the date or time represented. (*Id.*). As such, this Court scheduled a *Franks* hearing and granted Defendant's motion to allow for Defendant to "inspect" the relevant evidence and present his expert on the matter. The hearing was scheduled as a *Franks* hearing to ensure parties had an opportunity to question both the expert and the search warrant affiant. The motion for continuance was also denied, but this Court reset the deadlines for pre-trial motions and motions in limine "[t]o ensure parties have an adequate opportunity to consider information revealed on or before April 15, 2025." (ECF No. 65). Mr. Triplett also filed a Motion to Reconsider the Motion for Continuance. (ECF No. 67).

The *Franks* hearing was held on April 15, 2025. Triplett questioned the timestamped photographs, a death threat, and information about the confidential informant as referenced in the search warrant affidavit. This Court also conducted an in camera inspection of the photographs at issue on the device used to take them. This Court held that Triplett failed to establish how any discrepancy in the timestamps "would amount to a false statement knowingly and intentionally or with reckless disregard for the truth was included" in the search warrant affidavit or "how that allegedly false statement was necessary to a finding of probable cause." Accordingly, Triplett failed to meet the standards required for the *Franks* hearing. This Court also denied Triplett's request for reconsideration of the motion for continuance due to the previously reset deadlines. After the *Franks* hearing, Mr. Triplett filed a motion for reconsideration of the filing deadlines. (ECF No. 70).

On April 30, 2025, the Government filed a motion for a second *Lafler* hearing with respect to a new proposed plea agreement incorporating the Superseding Indictment. (ECF No. 71). During the hearing, the Government cautioned that the proposed plea agreement would be formally withdrawn at the conclusion of the second *Lafler* hearing and that consideration of timely acceptance of responsibility for any sentencing would be eliminated.  This Court briefly explained its holding on each of Triplett's pending motions and offered him an opportunity to discuss the plea agreement with his standby counsel. Triplett ultimately confirmed rejecting the plea offer.

While this Court's decision on each pending motion was entered on the record during the *Franks* hearing and the second *Lafler* hearing, this Court sets forth its reasoning in more detail  for each decision herein. This Opinion and Order resolves Mr. Triplett's motion to compel discovery and request for evidentiary hearing (ECF No. 51); motion to reconsider a continuance (ECF No. 67); and motion to reconsider the extension of pretrial motion deadlines (ECF No. 70).

## II.    LAW AND ANALYSIS

### A. *Franks* Hearing

This Court held a *Franks* hearing on April 15, 2025, to resolve issues raised in Triplett's motion to compel, requests for an in-court discovery and inspection hearing, and motion for continuance. (ECF Nos. 51; 57; 61; 65; 66).

A *Franks* hearing, deriving its name from *Franks v. Delaware*, 438 U.S. 154 (1978), allows a criminal defendant "to prove his allegations that officers had made false statements in their search warrant affidavits." *Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019). A defendant is entitled to a *Franks* hearing when the defendant "makes a substantial preliminary showing that a false statement, knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks,* 438 U.S. at 155–56. At the hearing, the defendant must establish the same by a preponderance of the evidence. *Id*. at 156. Provided the defendant also shows "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id*.

### 1.   *Intentionally or Recklessly Misrepresented Facts*

Mr. Triplett has failed to establish a false statement made in the search warrant affidavit. A defendant must "point to specific false statements" and "accompany his allegations with an offer of proof." *United States v. Cummins*, 912 F.2d 98, 101 (6th Cir. 1990) (internal quotations and citation omitted). Even then, it is insufficient to show that some of the information contained in the search warrant is false. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003).

8

Rather, the defendant must show by a preponderance of the evidence that the affiant "intentionally or recklessly misrepresented facts in order to secure the search warrant." *Id*.

Mr. Triplett took issue with Masinelli's statement that he "was able to obtain photographs of the Hotel database which showed Moore renting room 233 on 4/3/2024 at 0951 hours in her name." (ECF No. 51 at 1; ECF No. 34-2 at 4). This argument was similar to the motions this Court resolved in the December 19, 2024 Opinion and Order. (ECF No. 43). Here, however, Triplett also explained that evidence from the hotel showed that the room was booked in Ms. Moore's name on April 3, 2024, at 9:51 AM and the keycard was made at 10:03 AM, thus, he "and/or Ms. Moore" must have been in the lobby during these twelve minutes. (ECF No. 51 at 5). Triplett explained that an image provided by the Government showed the car parked outside of the hotel room and has a timestamp indicating it was taken at 10:03 AM on April 3, 2024. (ECF No. 51-1 at 1). He asserted that based on the timestamps, Masinelli is alleging that Triplett and Moore had already occupied their room  at 10:03 AM, contrary to the twelve-minute timeframe established by the hotel reservation and keycard. Triplett argued that, because Triplett and Moore were receiving their keycard from the hotel lobby at 10:03 AM, they were not in their car at 10:03 AM and they "could not have been in two different locations at 10:03 AM." (ECF No. 51 at 4). Triplett also argued the photos of the computer displaying the hotel database reflect that the photographs were taken between 9:59 AM and 10:00 AM, the same time Moore would have been in the lobby. (ECF No. 51 at 5).

Based on the twelve-minute timeframe that Triplett alleges contradict the relevant timestamps, he asserts the timestamps were fabricated. He maintains that he and Moore did not see Masinelli in the hotel lobby. Yet, the evidence together would mean Detective Masinelli "would have identified himself as law enforcement and requested information about Moore and

Triplett while being present in the lobby at the same time Moore and/or Triplett was in the lobby talking to hotel staff, processing and booking" the room. (ECF No. 51 at 5).

Triplett's reliance on discrepancies during the twelve-minute timeframe did not establish a false statement "knowingly and intentionally, or with reckless disregard for the truth" was made by Masinelli in the search warrant affidavit. *See Franks,* 438 U.S. at 155–56. During the hearing, Detective Masinelli testified that he saw Moore walk into the lobby. After she checked out the room, he took the photos of the hotel database and Moore was not in the lobby with him when he took the photos at issue. He emphasized that he obtained the information needed after Moore secured the room that morning and it took him approximately five minutes to introduce himself to staff and obtain the photographs of the hotel database. He testified he could not explain the times used by the hotel to indicate when Ms. Moore checked in or when the keycard was processed. Masinelli, however, explained that he took the photos at issue with his personal phone and allowed this Court to complete an in camera inspection.

During the inspection, this Court confirmed the dates and times the photographs were taken on Masinelli's phone in his camera app and provided screenshots of the data with Triplett and his standby counsel. Moreover, as Triplett presented his argument at the hearing and in his motions, he consistently asserted that Ms. Moore was in fact in the hotel lobby checking out the room that morning and Triplett was also either in the hotel lobby or in the car. Triplett's confirmation that he and Moore were at the hotel that morning checking out a room and the in camera inspection of Masinelli's phone with the relevant photographs taken at the relevant times support Masinelli's statement that he was able to obtain photos of the hotel database.

*2. Probable Cause*

Even if Mr. Triplett established that Masinelli's statement that he was able to obtain photos was a false statement made "knowingly and intentionally, or with reckless disregard for the truth," Triplett failed to meet the *Franks* standard because the remaining information in the search warrant affidavit nonetheless establishes probable cause. *See Franks,* 438 U.S. at 155–56. Probable cause "depends on the totality of the circumstances." *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc) (internal quotation marks omitted). An affidavit is found to have the necessary probable cause when it shows "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The search warrant affidavit must show a "nexus between the place to be searched and the evidence sought." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (quotation omitted). Detective Masinelli's Affidavit provides:

> Through investigation, I made contact with staff/management at the Quality Inn Hotel in Cambridge after identifying myself as a law enforcement officer and requesting information about Moore and Triplett. I was able to obtain photographs of the Hotel database which showed Moore renting room 233 on 4/3/2024 at 0951 hours in her name.
>
> Based on the information throughout this affidavit, your affiant believes that Moore and Triplett are staying at Room 233 of the Quality Inn Hotel located at 1945 Southgate Parkway in Cambridge, OH 43725.

(ECF No. 34-2 at 4).

Triplett's argument relying on Masinelli's statement of obtaining photographs ultimately fails for the same reason explained in this Court's December 19, 2024 Opinion and Order. (ECF No. 43). In his affidavit, Masinelli provides that a confidential informant reported that Triplett and Moore were going to get a local hotel room and that Triplett had a "large amount of narcotics on him." (ECF No. 34-2 at 4). The detective further explained that, while corroborating the

11

confidential informant's information, he surveilled the Quality Inn Hotel and observed Moore in a car with Mr. Triplett. (*Id*.). The investigation continued and Detective Masinelli contacted hotel staff and requested information about Moore and Triplett. (*Id*.) "Based on the information throughout [the] affidavit, your affiant believes that Moore and Triplett are staying at Room 233 . . . ." (*Id*. at 5). This was the "*nexus* between the place to be searched and the evidence sought." *Brown*, 828 F.3d at 381 (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). As such, when omitting Detective Masinelli's assertion that photographic evidence was obtained, probable cause to search room 233 remains. The information reported in the search warrant affidavit still provided probable cause.

This Court's finding may have been different, for example, if Masinelli relied on the photos obtained to receive the information establishing probable cause. Indeed, the search warrant affidavit reflects that photos obtained showed Moore renting room 233 but the affidavit does not suggest that the photos was the only source of the information and courts "do not scrutinize a warrant affidavit in a hypertechnical or line-by-line manner." *Sanders*, 106 F.4th at 463 (internal quotation marks omitted). Rather, the affidavit "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). This is because "search warrant affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Brooks*, 594 F.3d 488, 490 (6th Cir. 2010) (internal quotation marks omitted). Based on the search warrant affidavit, the information may have been revealed by means other than the photos—by requesting information from hotel staff after identifying himself as a law enforcement officer. Triplett has offered no evidence or argument to establish otherwise.

Another line of questioning explored by Mr. Triplett at the *Franks* hearing was regarding the "death threat" and revealed that Masinelli was informed of the threat on April 1, 2024. In the search warrant affidavit, Masinelli stated that Triplett made threats to the confidential informant by stating "Don't make me have to kill you." (ECF No. 34-2 at 2). The death threat was only referenced in sections of the affidavit where Masinelli requests non-consensual entry warrant and sealing. (*Id*. at 2, 5–6). Triplett questioned why the death threat was not explained in the "sequence of events" in the search warrant affidavit and Masinelli responded that the information was included where it was pertinent. Triplett explained that this questioning was to raise an issue of the credibility of the informant based on Masinelli's failure to explain the "animosity" between Triplett and the confidential informant.

Mr. Triplett's death threat argument appears to be an attempt to allege a material omission as opposed to a false affirmative statement. A defendant is entitled to a *Franks* hearing on the omission of material information if: "(1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). Arguments of material omissions must meet a "higher bar" because of the "'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *Id*. at 415–16 (quoting *United States v. Martin,* 920 F.2d 393, 398 (6th Cir.1990)).

Here, Triplett failed to meet this higher standard. He tries to attack the credibility of the confidential informant by relying on the lack of explanation in the search warrant affidavit of

"animosity" between him and the confidential informant. This alleged "animosity" between parties, however, could be inferred in the context of a death threat. Further, the search warrant affidavit details that the confidential informant has been a credible informant and provided information about Triplett. The search warrant affidavit also includes a section outlining information that confirmed the information provided by the confidential informant.

Triplett has failed to establish by a preponderance of the evidence that either a false statement or omission was made or that the alleged false statement or omission was necessary to the finding of probable cause. *See Franks,* 438 U.S. at 155–56.

### B. Motion to Compel Discovery and Request Evidentiary Hearing

In his motion, Mr. Triplett requests a hearing to inspect evidence related to the timestamped photos provided by the Government and requests additional evidence from the Government. (ECF No. 51). As discussed at length above, this Court separately addressed this request through a *Franks* hearing. With respect to the remaining evidence requested, under Federal Rule of Criminal Procedure 16(a)(1)(E), the Government is required to permit, upon a defendant's request:

> the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

First, several of Mr. Triplett's requests in this motion are moot as the Government indicates it has already provided the relevant information. Specifically, Mr. Triplett requests information in connection with the death threat referenced in the search warrant affidavit. (ECF No. 51 at 6). The Government does not oppose but indicates the death threat was communicated through an in-person conversation and that there is no documentation, recordings, or evidence to provide. (ECF

No. 68 at 2). Further, the Government explains it does not intend to use this information in their case-in-chief. (*Id*.). Similarly, Mr. Triplett requests a copy of the photograph sent by the confidential informant and all photographs referenced in the search warrant affidavit. (ECF No. 51 at 6–7). The Government represents that it provided the requested photographs. (ECF No. 68 at 3). Triplett also requests all dispatch and CAD reports. (ECF No. 51 at 7). The Government explains in its response that this information was also previously provided to Triplett. (ECF No. 68 at 5). As such, these requests are denied as moot.

Additionally, Triplett requests bodycam/dashcam footage and hotel lobby surveillance camera footage. (ECF No. 51 at 7-8). The Government represents that there is no footage to provide. (ECF No. 51 at 4-6). Accordingly, these requests are also moot.

Triplett also requests an inspection of Detective Masinelli's phone, Ms. Moore's phone, and his own phone. (ECF No. 51 at 7-8). He requests Masinelli's phone to address issues related to the timestamped photos. (*Id*. at 8). During the Franks hearing, this Court completed an in camera inspection of Masinelli's phone to address these concerns; thus, this request is moot. With respect to Moore's phone, Triplett requests inspection because the evidence on Moore's phone provided by the Government is "difficult to use" because the information was "mix[ed]" together. (*Id*. at 7). The Government represented it has provided all information it has from Moore's phone and no longer has the phone in evidence. (ECF No. 68 at 3). As such, this request is denied.

As to Triplett's request to inspect his own phone, he indicates needing the information to get phone numbers for potential witnesses and view his location data. The Government seized the phone during Triplett's arrest and the Government holds a search warrant authorizing a search of the phone. (ECF No. 68 at 4). The phone, however, is password protected which limits the Government's access to information. (*Id*.). Indeed, when "the item was obtained from or belongs

to the defendant," the defendant does not need to establish that the requested evidence "is material to preparing the defense" or "the government intends to use the item in its case-in-chief at trial" under Rule 16(a)(1)(e). Nonetheless, the requested item must be "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E).

The Government provided Mr. Triplett with all information in its possession regarding Mr. Triplett's phone. As to any additional evidence potentially on the phone, this Court has not found authority entitling a defendant under Rule 16(a)(1)(E) "to unlock the phone, access its contents, and then re-lock the phone so as to bar the Government from accessing the phone pursuant to its extant search warrant." *United States v. Gray*, No. 21 CR. 713 (PAE), 2024 WL 4627566, at *9 (S.D.N.Y. Oct. 30, 2024); *United States v. Young*, No. 23-CR-208 (MJD/ECW), 2024 WL 913308, at *4 (D. Minn. Mar. 4, 2024), *report and recommendation adopted*, No. CR 23-0208 (MJD/ECW), 2024 WL 2292263 (D. Minn. May 21, 2024) ("While the physical cellphone is the Government's possession by virtue of a warrant, the data it contains is not in the Government's possession because the cellphone is encrypted, Young has refused to provide his passcode, and the Government has not been able to break the encryption. Consequently, the data on the cellphone do not fall within the scope of Rule 16(a)(1)(E)."). As such, this request is denied. Provided Mr. Triplett wishes to allow the Government to access the phone as well, he may raise his request for inspection.

Finally, Mr. Triplett also requested a copy of a text message thread with the confidential informant so that he may review any information related to him. (ECF No. 51 at 6). The Government explained the text message thread requested is being withheld to conceal the identity of the confidential informant. (ECF No. 68 at 3). The Government nonetheless agreed to provide a copy of the text message exchange to this Court for in camera review. (*Id*.). Generally, the

Government may withhold the identity of those who disclose "their knowledge of the commission of crimes to law-enforcement officials." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). Nonetheless, if "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id*. at 60–61. "To determine whether an informer's identity should be disclosed, *Roviaro* requires balancing 'the public interest in protecting the flow of information' against an 'individual's right to prepare his defense.'" *United States v. Ray*, 803 F.3d 244, 273 (6th Cir. 2015) (quoting *Roviaro*, 353 U.S. at 62). In his motion, Triplett requests the text messages without any argument or indication as to why it would assist in his defense. (ECF No. 51 at 6). Moreover, this Court reviewed the text messages in camera and does not find its disclosure would be "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *See Roviaro* 353 U.S. at 60–61. As such, this request is denied.

Accordingly, Triplett's requests in his motion to compel (ECF No. 51) are **DENIED as moot** with respect to the information previously provided or not available. The motion is additionally **DENIED** as to the remaining requests for inspection of Moore's and Triplett's phone, and the request for a text message thread with the confidential informant.

### C. Motion to Reconsider Motion for Continuance

Mr. Triplett requested a continuance in order to file additional suppression motions besides the *Franks* motion and in relation to his motion to compel. (ECF No. 67). This Court reset the deadlines for filing pretrial motions so Mr. Triplett may receive the Government's response to the motion to compel, participate in the Franks hearing, and file any motions related to this information. As such, the motion (ECF No. 67) is **DENIED**.

17

### D.  Motion to Reconsider Extension of Pre-trial Motion Deadlines

After the *Franks* hearing, Mr. Triplett requested an extension of pre-trial motion deadlines due to *Brady* violations. (ECF No. 70). This request returns to Triplett's issue with the timestamped photos. Triplett argues the Government failed to disclose the fact that Masinelli used his personal phone and the phones' camera app to take the photos of the hotel computer database and misrepresented the use of a separate phone app to capture the photos. (*Id*. at 2).  Triplett states he has requested the timestamps for nine months now, "not to build a 'theory' that the police altered these timestamps but only to confirm the timestamps."  (*Id*.). He explains this delay prejudiced his defense because he was unaware of this until the day of the *Franks* hearing (*Id*. at 3) and because "it was critical that the defense authenticate the timestamps of the at-issue photos" due to a twelve-minute timeframe that "would have discredited" Masinelli (*Id*. at 4–5).  He asserts this violated his Sixth and Fourteenth Amendment rights. (*Id*. at 5).

While Triplett indicates pursuing authentication of the timestamped photographs for nine months, in the December 19, 2024, Opinion and Order this Court addressed the same timestamped photographs. (ECF No. 43). This Court noted that "[a]ssuming Mr. Triplett has a legitimate argument that a false statement was made and the statement was made 'knowingly and intentionally, or with reckless disregard for the truth,' this Court would still need to ask whether, after omitting the false information, probable cause remains in the search warrant affidavit." (*Id*. at 13). This Court then found that probable cause remained when omitting the *same information* Triplett has alleged to be false for nine months. (*Id*. at 14; ECF No. 70 at 2). He did not need to continue to devote his time to authenticating these timestamps for purposes of a *Franks* motion without any showing that probable cause would not remain if the alleged false statement was

omitted from the search warrant affidavit. He has not suggested or made any such showing and he has not indicated any other purpose for authenticating the timestamps for pretrial motions.

Triplett also argues for an extension because there was "newly discovered evidence" related to the "death threat" revealed during the *Franks* hearing. (ECF No. 70 at 5). In his motion, Triplett states that Masinelli revealed the confidential informant reported the death threat on April 1, 2024. Triplett asserts that this timing was unknown to him and is significant "because it shows there was a beef and/or some type of animosity between the informant and Mr. Triplett which goes to the credibility of the informant." (*Id.* at 6). He maintains that this must be challenged in a motion to suppress. (*Id.*). He further attacks the confidential informant's credibility by stating the informant "was arrested days before April 1, 2024." (*Id.*).

There was ample opportunity to discredit the death threat through pre-trial motions. Triplett was aware of the threat referenced in the search warrant affidavit and he requested information surrounding it. Based on the search warrant affidavit, the confidential informant provided information about Triplett on April 1, 2024, and the confidential informant stated that Triplett made a threat to the informant. (ECF No. 34-2 at 2, 3, 5–6). The search warrant was executed on April 3, 2024. (ECF No. 34-1). On December 9, 2024, in response to Mr. Triplett's request for "information regarding how a death threat made by Mr. Triplett was communicated to law enforcement" the Government provided the following:

> Mr. Triplett has been provided all reports of law enforcement as well as the search warrant affidavit written by Detective Masinelli. Undersigned counsel confirmed with law enforcement that, due to the threat being relayed to law enforcement in person, no other discoverable material is in their possession relating to this request.

(ECF No. 39 at 3). Rather than filing motions to discredit the confidential informant or the death threat, Triplett made the same request for death threat information in March to which the Government responded on April 14, 2025:

> The defendant asks for "information surrounding the death threat reference in the search warrant." Specifically, the search warrant affidavit submitted by Detective Masinelli states that the CI shared that the defendant made a threat "to them stating that 'Don't make me have to kill you.'" The undersigned have confirmed that this information was shared during an in-person conversation between the CI and law enforcement. There are no recordings of this conversation. Furthermore, the United States does not intend to use this information in its case-in-chief, and there is no additional documentation to provide.

(ECF No. 68 at 2).

Provided Triplett had any issue with the search warrant affidavit statement that a death threat was reported, he could have filed motions raising the issue—especially after the Government first indicated it was relayed in-person and had no further evidence. It is unclear why Triplett needed to know that the report happened on April 1, 2024, (rather than April 2 or 3) to be able to assert that a death threat never occurred or raise an issue of the confidential informant's credibility. Even if the specific date of the threat was relevant, Triplett was aware that the search warrant affidavit did not include a date of the threat before the *Franks* hearing.

Triplett's reference to an arrest of the confidential informant is similarly futile. It appears he was already aware of this information. Even so, "[t]he fact that the confidential informant was engaged in criminal activities might make the confidential informant less credible than a member of the general population, but that is hardly a reason to doubt the reliability of the information given to the affiant, especially given the numerous indications of reliability provided in the affidavit." *Fowler*, 535 F.3d 408, 416 (6th Cir. 2008) ("Even if the ATF agents had failed to inform the magistrate of the confidential informant's criminal activity, such an omission would not satisfy the second requirement for a *Franks* hearing because the additional information would have had no impact on the finding of probable cause.").

Another issue raised by Triplett was the fact that this Court held a *Franks* hearing. He states he was not prepared, and he only sought a discovery and inspection hearing so he could prepare

for a suppression motion in the future. The hearing was not offered to disadvantage Triplett. The hearing was offered to fully address Triplett's endless endeavor of authenticating information. The hearing offered him an opportunity to conduct his requested discovery and inspection, explore the questions he continued to raise in motions, and better explain his arguments to this Court. Given the timing of trial and Triplett's expressed intent to file motions to suppress related to the search warrant affidavit, this Court offered him time to address the affiant in an efficient manner. His current motion to extend deadlines relies on the disclosure of the timestamped photographs, the confidential informant, and the death threat. Triplett addressed these issues during the hearing and was only stopped when further inquiry would have revealed the identity of the confidential informant and when he made contradicting statements that began to mislead the Court. Despite the leeway granted, this hearing revealed no new basis to continue the trial date or related deadlines. Similarly, the response to the motion to compel (ECF No. 68) did not reveal any significant new information or that any pertinent information was being withheld.

As such, Triplett's request for an extension of pre-trial motion deadlines (ECF No. 70) is **DENIED**. Triplett additionally requests the transcripts and audio of the testimony from the *Franks* hearing and requested an IT technical expert to review the photos on Masinelli's phone to reassure him of its authenticity. With respect to the IT technical expert, the request is denied as this Court has already reviewed the photos, inspected the device used to take the photos, confirmed the times at which the photos were taken, and shared screenshots with Mr. Triplett. As to the request for transcripts of the *Franks* hearing, standby counsel is **DIRECTED** to assist Mr. Triplett in this request process.

### III. CONCLUSION

For the reasons stated above, the motions (ECF Nos. 51, 67, 70) are **DENIED**. Standby

counsel is **DIRECTED** to assist Mr. Triplett with requesting the transcript for the April 15, 2025

hearing.

**IT IS SO ORDERED**.

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  May 9, 2025**